**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN DOE,  <br><br>　　　　Plaintiff,  <br><br>　　　　v.  <br><br>THE FEDERAL REPUBLIC OF GERMANY, AND THE BUNDESKRIMINALAMT OF THE FEDERAL REPUBLIC OF GERMANY,  <br><br>　　　　Defendants. | Civil Action No._____ |

**PLAINTIFF'S *EX PARTE* SEALED MOTION FOR LEAVE TO PROCEED ANONYMOUSLY UNDER A PSEUDONYM**

**I.　　INTRODUCTION**

Plaintiff hereby requests permission to proceed anonymously in this case under the pseudonym "John Doe." While "John Doe" has been used as a generic pseudonym in court proceedings in the United States for ages, Plaintiff is the specific John Doe who provided the Panama Papers to journalists worldwide in 2016, an act that exposed global corruption at the highest levels, toppled multiple world leaders, and fundamentally changed the field of journalism in ways previously believed unthinkable.

Plaintiff does not take the request to proceed under a pseudonym lightly, nor have they[1] taken any aspect of the Panama Papers lightly. The documents expose the fundamentally corrupt and secret foundation on which much of the global economy rests—the result of years of hidden evolution in a part of the financial sector that most are not even aware exists. From the moment Plaintiff began examining the Panama Papers nearly a decade ago, it was clear that every decision involved would very likely be a life-or-death matter, not just for Plaintiff, but for their family, friends, colleagues, and numerous individuals connected to the Papers whose existence

---

[1] For safety reasons, gender-neutral pronouns are used to refer to Plaintiff throughout this motion.

1

Plaintiff was not even aware of, and still may not be. Despite the odds, even seven years after publication, Plaintiff and those close to Plaintiff remain alive and thus far, safe. This unlikely but fortunate outcome required extremely careful planning and a series of deliberate choices. That said, others involved in reporting on the Papers have been less fortunate.

## II.     ARGUMENT

### A.     Legal Standard

This Court evaluates requests to proceed under a pseudonym according to the ten-factor test discussed in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188 (2d Cir. 2008). That test comprises the following "non-exhaustive" factors:

[1] "whether the litigation involves matters that are highly sensitive and of a personal nature";

[2] "whether identification poses a risk of retaliatory physical or mental harm to the [plaintiff] or even more critically, to innocent non-parties";

[3] "whether identification presents other harms";

[4] "whether the plaintiff is particularly vulnerable ..., particularly in light of [their] age";

[5] "whether the suit is challenging the actions of the government or that of private parties";

[6] "whether the defendant is prejudiced by allowing the plaintiff to press [their] claims anonymously";

[7] "whether the plaintiff's identity has thus far been kept confidential";

[8] "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [their] identity";

[9] "whether, because of the purely legal nature of the issues presented ..., there is an atypically weak public interest in knowing the litigants' identities";

[10] "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 190. Plaintiff will address each in turn, keeping in mind that severe and serious threats can outweigh other considerations.

**B.     The ten factors weigh in favor of permitting Plaintiff to proceed anonymously under a pseudonym.**

**1.     The litigation involves matters that are highly sensitive.**

This litigation stems from a covert operation of a foreign government to acquire data regarding criminals across the globe. Although the matters involved are not of a directly "personal nature" with regard to Plaintiff, they are highly sensitive. Plaintiff's identity in particular is highly sensitive due to the risks described in relation to the other factors.

**2.     Identification does pose the immediate "risk of retaliatory physical or mental harm to the … party or even more critically, to innocent non-parties."**

Plaintiff's safety and security is of the utmost concern and has been from the start. This is why Plaintiff chose to disclose the Panama Papers to *Süddeutsche Zeitung* in 2015 ***only*** through the use of a pseudonym ***in conjunction*** with encrypted channels. Even many popular encrypted messaging applications were (and remain) too insecure to handle the sensitive nature of what Plaintiff had to communicate, because many of them require the disclosure of a telephone number or other form of contact information to create an account. Plaintiff was so concerned about their identity becoming known that after a brief, vague introduction from a new e-mail account created for a single purpose, Plaintiff only communicated with the journalists using an encrypted application that created a random handle for each user, e.g. Px4R2j9E, and required no contact information to be disclosed whatsoever. Plaintiff informed the journalists that in highly atypical fashion, they would never meet, never be able to verify their source's credentials, and never know how or why Plaintiff had decided to take action. The journalists simply had to rely on the documents themselves.

Plaintiff's level of concern today is even greater than it was before publication in 2016. What Plaintiff merely suspected at that time—that some of the individuals identified and/or implicated in the Panama Papers were world leaders with vast intelligence agencies under their control—has long since been proven. The Panama Papers exposed the corrupt financial dealings of Vladimir Putin and Xi Jinping and their proxies, among dozens of other global heads of state

and key government officials. Both the Russian Federation and the Chinese Communist Party are known for their repressive regimes, which employ control tactics including but not limited to extralegal murders and kidnappings carried out by a variety of agencies whose agents are deployed to "neutralize" threats: notably, the FSB, GRU, and SVR in Russia, and the MSS among other agencies in China. To them, Plaintiff is regarded as a serious threat.[2]

Even more concerning to Plaintiff is the fact that the *New York Times* very recently confirmed that Russian intelligence agents have been active in the United States as they attempted to plan the assassination of a dissident who dared to resist President Putin, not in Russia, but on American soil. *See* "Russia Sought to Kill Defector in Florida," June 19, 2023, https://www.nytimes.com/2023/06/19/us/politics/russia-spy-assassination.html. Although such reports are rarely confirmed in the newspaper of record, this report is not even the first of its kind. *See also* NBC 4 Washington, "Police: Ex-Russian Official Found Dead in DC Hotel Died of Blunt-Force Head Trauma," March 10, 2016, https://www.nbcwashington.com/news/local/ex-russian-official-found-dead-in-dc-hotel-died-of-blunt-force-head-trauma/125455/.

Similarly, it has been widely reported that the MSS operates remote, secret "police stations" in populous cities within the United States, far from China's borders. *See Nikkei Asia*, "China's 100-plus 'secret police stations' span from NY to Tokyo," June 6, 2023, https://asia.nikkei.com/Politics/International-relations/China-s-100-plus-secret-police-stations-span-from-NY-to-Tokyo. In addition, the Saudi government (which also features heavily in the Panama Papers) has made efforts to target both U.S. journalists—such as Jamal Khashoggi, who was violently murdered in the Saudi consulate in Istanbul in 2018—and those far from Riyadh who speak out against the regime, such as Omar Abdulaziz, a friend of Khashoggi's living in exile in Canada. *See The Guardian*, "Exclusive: Saudi dissident warned by Canadian police he is a target," June 21, 2020, https://www.theguardian.com/world/2020/jun/21/exclusive-saudi-dissident-warned-by-canadian-police-he-is-a-target. It is likely that Plaintiff would be treated in

---

[2] Discussion of the Panama Papers was banned on the Chinese internet within hours of publication. *See The Guardian*, "All mention of Panama Papers banned from Chinese websites," April 5, 2016, https://www.theguardian.com/news/2016/apr/05/all-mention-of-panama-papers-banned-from-chinese-websites.

similar fashion by such state actors: as a target for assassination or kidnapping on foreign soil—but only if those actors knew who they were looking for or where to find them.

Whether Plaintiff is or is not a defector from the Russian Federation, what is clear is that President Putin especially has made a habit of murdering those who oppose him, no matter where they are on this planet: Moscow, Kiev (and all of Ukraine), London, Berlin, Tomsk, Miami, or Washington. Eliminating any doubt that Plaintiff is on Putin's list of targets is the fact that Russia Today ("RT"), a propaganda organ of the Russian Government operating in the United States and worldwide, created a docudrama about the Panama Papers—since removed from YouTube as part of a U.S. Government crackdown on RT—whose introduction featured gratuitous violence directed at the John Doe behind the leak, i.e., Plaintiff. Still images from that introduction, depicting blunt-force trauma to the head of the John Doe character, are presented in ¶ 12 of the Complaint.

This was a not-so-subtle warning. President Putin wants Plaintiff dead, and if he had the ability to discern Plaintiff's actual identity, it is likely that Plaintiff would already be dead.

Additionally, identification of Plaintiff's true identity would immediately expose dozens of individuals to likely physical harm, including Plaintiff's family members; Plaintiff's husband, wife, or partner; children; friends; colleagues; other close associates, and anyone who could potentially be used as leverage to force Plaintiff to divulge information of interest to a variety of malevolent actors. To call this a nightmare scenario is an understatement. While there is no doubt that the Court routinely encounters cases where revenge and physical threats make an appearance, there are likely few cases where so many people globally have wanted to bring serious harm to the same pseudonymous person. It is a simple fact that Plaintiff's anonymity may be the only thing keeping them alive.

In a tragic demonstration of how dangerous the type of information contained in the Panama Papers is, Maltese journalist Daphne Caruana Galizia was murdered on October 16, 2017 when a car bomb exploded under her parked vehicle at home. *See* BBC, "Daphne Caruana Galizia murder: Suspect pleads guilty," February 23, 2021, https://www.bbc.com/news/world-

5

europe-56172454. In the days and weeks before her death, Ms. Caruana Galizia publicly described part of a plot by Maltese politicians to siphon money from public coffers into their own hidden shell companies through a complex scheme involving payments for Malta's natural gas reserves. Detailed information regarding these companies was included in the Panama Papers.

Slovak investigative journalist Ján Kuciak was also murdered along with his fiancé on February 21, 2018. *See* BBC, "Jan Kuciak: Four charged over murder of journalist and fiancée," October 21, 2019, https://www.bbc.com/news/world-europe-50127679. Kuciak had reported on the aftermath of the Panama Papers in Slovakia.

There can be no question that the physical threat posed to Plaintiff and those closest to them is real and imminent. The best protection Plaintiff has is the insistence on absolute anonymity, which—ironically—requires the total avoidance of any paper trail involving a public institution, such as a court, that can be traced back to them.

### 3. Identification does present "other harms."

Identification of Plaintiff's true identity would likely open Plaintiff up to frivolous SLAPP litigation by those aggrieved by the disclosures in the Panama Papers, and possibly by whatever remains of Mossack Fonseca itself, whether through the firm or via its former partners.

### 4. Plaintiff's age is a neutral factor.

Without divulging any detail, to the extent that Plaintiff has or cares for children or the elderly, this should be a consideration that the Court takes into account. Plaintiff has numerous close contacts who have children who would be at risk were Plaintiff's identity to become known.[3]

---

[3] In the aforementioned article concerning Russian operations on U.S. soil, the *New York Times* has documented one way in which Russian operatives ensnare vulnerable contacts in traps so as to create leverage.

**5.     This action is exclusively about the actions of a foreign government.**

Plaintiff sues the government of the Federal Republic of Germany and one of its agencies, the Bundeskriminalamt ("BKA"). While there may generally be a "a heightened public interest when an individual or entity files a suit against the government," there are different types of lawsuits filed against governments. While this case may touch on policy indirectly, it is fundamentally not a case about changes to laws in the United States or the United States government. Furthermore, the public will have the opportunity to learn a great deal about the Panama Papers and how it has been handled by governments, whether fairly or unfairly, even without the revelation of Plaintiff's identity. The specific public interest in learning Plaintiff's name does not come close to outweighing Plaintiff's reasonable desire to remain alive. In short, "nothing about these proceedings creates any need for transparency with respect to the plaintiffs' identities." *Asylum Seekers Trying To Assure Their Safety v. Johnson*, Case No. 1:23-cv-00163 (D.C.D. January 26, 2023). As in *Asylum Seekers*, "anonymity appears to be necessary." *Id*.

**6.     Defendants will not be prejudiced by Plaintiff's use of a pseudonym.**

The BKA, and by extension the German government, already knows Plaintiff's true identity, having at least purportedly guarded them for months while in Germany, as described in ¶¶ 43-46 of the Complaint. The BKA also warned Plaintiff in writing that voluntarily revealing their identity could lead to a revocation of the German government's willingness to provide protection. Complaint ¶ 36. Furthermore, the BKA and the German government are already on notice of the claims in this action, having been provided with several advance warnings conveyed through various counsel to Plaintiff over a period of years. In that context, it should not come as a surprise that Plaintiff has filed this action, nor that Plaintiff does not desire to have their identity revealed. Defendants will have every opportunity to mount a full defense even without publishing Plaintiff's name and knowing their present location, which is irrelevant.

### 7. Plaintiff's identity is not known to the general public.

Plaintiff has exercised great caution in order to keep their true identity from becoming known to the general public since 2015, when the Panama Papers collaboration began. The public knows Plaintiff only as John Doe.

### 8. Public interest in the litigation would not be furthered by requiring Plaintiff to disclose their identity.

This litigation focuses on a contract dispute. The public interest would not be furthered by learning the identity of Plaintiff, a private person. The majority of the public interest in the case stems from learning about how the German government treats whistleblowers and the differences between its public pronouncements and actual conduct.

### 9. Public interest in this litigation is "atypically weak" with regard to Plaintiff's identity.

Since this litigation does not involve two private parties, or any facts that hinge on Plaintiff's identity, Plaintiff's true identity is irrelevant.

### 10. There are no alternative mechanisms for protecting Plaintiff's confidentiality.

Simply redacting information in this case would not be adequate to protect Plaintiff from the real threats against them. The only way to protect Plaintiff in this matter is for Plaintiff to proceed anonymously.

### C. A note regarding involvement of counsel.

Plaintiff understands that counsel may be needed to prosecute certain aspects of this litigation. To the extent that counsel is needed in the future, Plaintiff will endeavor to involve knowledgeable and experienced attorneys.[4] At this early filing stage, having analyzed the situation thoroughly, Plaintiff believes the involvement of counsel to be unwise at present for numerous safety reasons, including but not limited to the fact that some attorneys understandably appear to be afraid to represent Plaintiff in a public setting.

---

[4] Should Plaintiff ultimately engage counsel for this action, Plaintiff will ask counsel to handle payment of the filing fee.

**III.     CONCLUSION**

There can be no question that the ten factors weigh in favor of proceeding under a pseudonym in this action. If Plaintiff is not able to proceed anonymously under a pseudonym, then this case will not be able to proceed. Therefore, Plaintiff respectfully requests that this motion to proceed under the pseudonym "John Doe" be granted.

Dated: July 24, 2023                                  Respectfully submitted,

/s/John Doe
John Doe
doevgermanylitigation@protonmail.com