John Doe

December 12, 2023

**VIA E-MAIL and CM/ECF**

Hon. Gary Stein
United States Magistrate Judge
Southern District of New York

Re:   *Doe v. The Federal Republic of Germany et al*, Case No. 1:23-cv-06395-VSB-GWG (S.D.N.Y.)

Dear Judge Stein:

I write in response to the Court's October 13, 2023 Opinion and Order (ECF No. 15) and the Court's November 21, 2023 Order (ECF No. 19, and collectively, the "Orders"). The Orders present a number of interlocking challenges that I will attempt to outline in this letter in an attempt to untangle them, which the Court may construe as a letter-motion if it so desires.

The first challenge is that the October 13, 2023 Opinion and Order states on page 23, "the Court believes it should resolve Plaintiff's motion [for leave to proceed under a pseudonym] with the benefit of Defendants' views rather than on an *ex parte* basis." However reasonable this may be, obtaining the Defendants' views requires serving them. Nevertheless, in its November 21, 2023 Order, the Court then denied a motion to effect service on Defendants, stating, "there is a more fundamental reason why the Court is unable to exercise whatever discretion it may have to provide Plaintiff with the relief he seeks…this case cannot proceed unless Plaintiff provides his identity to the Court under seal." Read together, the Orders suggest that the motion for leave to proceed under a pseudonym cannot be decided until the Defendants are served, and the Defendants cannot be served unless I provide my identity to the Court "under seal." This is tantamount to denial of the motion and arguably puts the cart before the horse of "obtaining the Defendants' views."

The second challenge is that the facts of this particular case are not fully addressed by precedent. I have given careful consideration to the types of risks involved with providing my identity to the Court "under seal." Those risks are substantial. Whether they materialize depends in part on the robustness of the sealing process—and it has been established that for these purposes, CM/ECF is anything but robust—but also in part on the trustworthiness of the judge and the judge's staff. Even then, the most upstanding civil servant is still no match for the adversaries involved here.

1

As accurately summarized in ECF No. 15 at 22, anyone who knows my identity is a potential target for a wide array of malicious state actors (among others) notable for their brazen willingness to blackmail, kidnap, torture, and kill. Anyone who knows my identity *and makes that fact known publicly* would be in especially grave danger, as would their family members and professional colleagues, especially those perceived to have any access to information concerning this matter. It is my sincere belief that the Court underestimates the danger to itself that its request for my identity poses, however grounded in precedent it may seem. This is the rare, perhaps unprecedented, case where the *only* guarantee of the Court's and the parties' safety is the plaintiff's full anonymity. The Court's safety and my own must supersede any related precedent that does not address this key fact head-on. Thus far, no case cited by the Court does.

A third challenge is human fallibility. The Court has given me reason to acutely distrust its ability to safely handle a matter as sensitive as my identity based on its handling of a far more mundane filing, no matter how the information is stored. When I filed this action, the Clerk of Court staff made a simple oversight and failed to docket my Request to Proceed *In Forma Pauperis* that was initially included among the opening documents. When I alerted the Clerk of Court staff to this oversight via e-mail, that message was mistakenly processed by the Court *as a request to open an entirely new case*, which it was decidedly not. When I again informed the Clerk of Court staff of its error, Chief United States District Judge Laura Taylor Swain promptly dismissed the duplicative action (assigned Case No. 1:23-cv-07497 without my knowledge or consent) without acknowledging that its filing was the Court's mistake in the first place. This omission then potentially resulted in the false accusation contained in the Court's November 21, 2023 Order, namely, that "Plaintiff chose to file a duplicative action and duplicative motions in this District." In sum, the Court could not process a basic e-mail properly—let alone the subsequent e-mail correcting the staff's oversight regarding the first—and placed the blame on the wrong party. That is concerning enough. It now asks to be entrusted with information that could spell the difference between life and death for myself and for its own employees.[1]

There is a fourth challenge, too, which is this nation's uncertain political future. There is ample evidence in the public domain that Donald J. Trump has long been an agent of the Russian Federation (and before that, the former Soviet Union). In the event that Mr. Trump is re-elected President, he could use his malign influence to force or otherwise convince the Court to disclose my "sealed" identity, which would be consistent with the types of threats he has already made regarding his putative second term. In his last term, Mr. Trump appointed numerous judges.

---

[1] For its part, the United States District Court for the District of Columbia refused to acknowledge any shortcomings in CM/ECF despite relevant admissions by the Administrative Office of the United States Courts. Its inflexibility, combined with the existence of its Local Civil Rule 5.1(c)(1) regarding pseudonymous filing, suggested that filing in a venue with a connection to the facts of the case but lacking a similar Rule—as is true of the Southern District of New York—would present the only path forward for this action. This District's Electronic Case Filing Rule 2.2 is inapplicable so long as filing takes place via e-mail. Also, to be clear, the Complaint filed in this action is not strictly "duplicative" of the Complaint filed in the District of Columbia as it contains additional facts. *See* Complaint ¶¶ 92-97.

For these reasons, it would be unwise for me to comply with any request to provide my identity to any Court until it has been conclusively established that doing so is *absolutely* necessary to achieve reasonable judicial objectives such as those described in *Publicola v. Lomenzo*, 54 F.4th 108 (2d Cir. 2022), a case that notably did not involve any credible death threats or foreign state actors. Those objectives appear to be (1) accountability, via hypothetical sanctions, for "fil[ing] papers that contain misleading or frivolous assertions," which is a situation that rarely transpires at all and will certainly not transpire here; (2) checking for judicial conflicts; and (3) enforcing hypothetical judgment preclusion should additional litigation arise between John Doe and the Federal Republic of Germany and/or the Bundeskriminalamt ("BKA").

Of these three objectives, checking for judicial conflicts is the only task that does not involve a hypothetical scenario. 28 U.S.C. § 455 does not explicitly require that a judge know the name of a party to evaluate potential conflicts. I can and do certify under penalty of perjury that I am not personally known to you or Judge Broderick or any of the Court's judicial staff, or a "spouse, or a person within the third degree of relationship to [any judge handling this matter or their spouse], or the spouse of such a person" within the meaning of 28 U.S.C. § 455, nor does any judicial branch employee or spouse have a "financial interest" in me as a natural person. Nor would providing the Court with my identity have any bearing on the more pertinent sections of 28 U.S.C. § 455, some of which concern prior association in private practice with "the matter in controversy," which here would be "leaks of offshore data" and does not depend upon my true name or location. 28 U.S.C. § 144 requires the filing of an affidavit by a party requesting recusal; such an affidavit has not been filed here, rendering that statute moot in this context.

As to preclusion, the Defendants in this action are already aware of my identity. Though they have agreed to keep it confidential, they would surely not hesitate to object to any attempt to improperly re-litigate an already closed matter (and at present, this action is not yet closed).

As to sanctions, there is no reason for the Court to demand my identity at this juncture[2] any more than there is cause for the Court to require production of a bank statement upon filing of a complaint proving that a plaintiff could pay a hypothetical monetary sanction for a future transgression. No sanctionable conduct has arisen in this action, it is likely that none ever will, and the defendants have not yet even appeared. While the Court might reasonably want to guard against the remote possibility that even the filing of the Complaint here was sanctionable conduct—for example, in case I am an impostor "John Doe"—the best and proper sanction in that scenario would be immediate dismissal of all claims with prejudice, which does not hinge on identity. If, however, I am actually the John Doe who provided the Panama Papers to the BKA in Germany pursuant to a verbal and later written contract as described in the Complaint, then presumably Defendants can and will confirm that fact, and my serious concerns over safety and security would be substantiated.

---

[2] Federal Rule of Civil Procedure 11(a) is not such a reason. "The Supreme Court has interpreted Rule 11(a) to require 'as it did in John Hancock's day, a name handwritten (or a mark handplaced).' *Becker v. Montgomery,* 532 U.S. 757, 764 (2001)." *Rosenberg v. City of New York*, Case No. 20-cv-3911-CM (S.D.N.Y. 2020). I have personally signed all of my filings using electronic means in compliance with this Rule.

This brings us full circle to the issue of service. Pursuant to 28 U.S.C. § 1608(a)(1), Defendants have been served. In February 2017, in Meeting Room 6 of a hotel I visited in Germany shortly after arriving there, I was introduced in person to an attorney by the same Agents A and W mentioned in the Complaint. It was offered that any and all potential legal issues with the BKA should be handled through that attorney, starting with the issues described in Complaint ¶ 44, to which I agreed. The same attorney was involved in failed negotiations with the BKA prior to the filing of this suit.[3] As of December 11, 2023, the same attorney provided the BKA with the Summons and Complaint, fulfilling my service obligations.

"Although service of process is not specifically mentioned in § 26, it falls within the category of '[a]ll notices and communications between the parties' in § 26.1. Thus, § 26 does establish a special arrangement for the service of process under the FSIA." *Arbitration Between Space Systems v. Yuzhnoye Des.*, 164 F. Supp. 2d 397, 402 (S.D.N.Y. 2001). It should be noted that as alleged in the Complaint, the subject of this litigation is a covert operation in which German authorities purposefully declined to put anything substantive in writing. *See* Complaint ¶¶ 7 n. 2, 10, 57, 58, 70. Under these highly unusual and, again, arguably unprecedented circumstances, a verbal agreement to communicate about all legal matters via a particular foreign attorney amounts to a "special arrangement for service" pursuant to 28 U.S.C. § 1608(a)(1).[4]

In the alternative, the Court should reconsider its determination that the BKA cannot be (or at this point, has not been) served pursuant to 28 U.S.C. § 1608(b) as an "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b). First, it is incorrect that the BKA "has no apparent commercial function" as the BKA serves both governmental and commercial roles, the latter of which has been both crucial and dominant in this matter in particular. ECF No. 15 at 15. As alleged in Complaint ¶ 30, the BKA purchased the Panama Papers as part of its frequent participation in the "market…for leaked tax data," an inherently commercial activity. *See also* https://dserver.bundestag.de/btd/19/070/1907022.pdf (report from the BKA to the German Bundestag detailing a history of commercial data purchases). As the result of Hitler's horrific legacy, the modern German government is uniquely and somewhat famously decentralized.[5] The BKA—located in Wiesbaden, approximately 350 miles from the center of government in Berlin—has contracted in its own name (or fictitious names) as a legal entity distinct from the overall German state to rent real estate, open bank accounts, lend property, negotiate with regional governments, and purchase data. The BKA also meets the definition of an "organ of a

---

[3] The Complaint in this action was largely prepared by a law firm, which, after spending a considerable amount of time on drafting, learning my identity, and hoping to reach a quick settlement for a sizable fee, effectively admitted that it never actually intended to litigate the case and summarily withdrew. Subsequent efforts to identify a suitable attorney have been frustrated by the fact that nearly all attorneys lack the requisite technical skills to handle truly sensitive data, including many attorneys who bill themselves as "whistleblower" attorneys.

[4] Furthermore, although the Court has rejected the theory that secure, encrypted electronic communication via agreed-upon means meets the criteria required for adherence with 28 U.S.C. § 1608(a)(1), the BKA did also verifiably receive the Summons and Complaint in this action on November 20, 2023 at 7:49 AM Eastern Time via Agent M, whose phone number ends in 38.

[5] *See* ECF No. 18, requesting service under the Hague Convention on two of more than a dozen different "central" authorities. Germany is atypical in having decentralized its central authorities.

foreign state" pursuant to 28 U.S.C. § 1603(b)(2) and the criteria outlined in *Filler v. Hanvit Bank*, 378 F. 3d 213, 217 (2d Cir. 2004). Per the BKA website, it was created by statute for a purpose: "The fundamentals for the establishment of the Bundeskriminalamt are codified in Articles 73 no. 10 and 87 section 1 sentence 2." *See* https://www.bka.de/EN/TheBKA/History/history_node.html?cms_date=1946. It is supervised by the German state: "The BKA is a subordinate **agency** to the Federal Ministry of the Interior" (emphasis mine). *See* https://www.bka.de/EN/TheBKA/OurLegalMandate/ourmandate_node.html. BKA employees are public employees and the BKA is Germany's only federal police agency. The BKA is "neither a citizen of a State of the United States . . . nor created under the laws of any third country" pursuant to 28 U.S.C. § 1603(b)(3). Thus, it can and should be considered an "agency" of the Federal Republic of Germany—exactly what it calls itself—for the purposes of the Foreign Sovereign Immunities Act.

To the extent that the Court does not agree with the above, I request that the Court electronically sign and return (by e-mail or by posting to the docket) copies of the Hague Convention documents I submitted as part of ECF No. 18, Exhibits 1, 2, 4 and 5 so that I can attempt service under 28 U.S.C. § 1603(a)(2). If that is somehow not possible, I request that the Court proceed with service of process pursuant to 28 U.S.C. § 1603(a)(3) using the materials I have provided.

Allowing full anonymity with respect to the Court in this case would establish a very limited precedent only for litigants facing the most extreme types of threats. At this time, absent any statute, regulation or rule[6] that explicitly requires it, and absent an explanation of why my identity and additional contact information are absolutely necessary to move forward in these novel circumstances given my willingness to clarify under oath that no identity-dependent judicial conflicts apply, I must respectfully decline to provide such information to the Court.

Signed,

/s/John Doe
John Doe

E-Mail: doevgermanylitigation@protonmail.com
*Plaintiff*

---

[6] "No federal statute prohibits litigants from filing civil actions under fictitious names. By the same token, such a presumption is not perfectly traceable to any federal constitutional provision or rule… [I]f the Civil Rules should be read to mandate that a complaint state the parties' true names, it would be odd that courts have converted this command into a rebuttable presumption. *Cf. United States v. Tsarnaev*, ___ U.S. ___, 142 S. Ct. 1024, 1036, 212 L.Ed.2d 140 (2022) (explaining that 'supervisory rules' made by federal courts cannot 'conflict with or circumvent a Federal Rule' (citing *Carlisle v. United States*, 517 U.S. 416, 426, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996)))." *Doe v. Massachusetts Institute of Technology*, 46 F. 4th 61, 67 (1st Cir. 2022).